Thank you. Good morning, Your Honor. May it please the Court, I'm J.P. Camp. I represent the appellant, Amy Buchanan, who is also in the courtroom with us today. I would like to reserve two minutes for rebuttal, if I could. This is our second time before this Court. The first time was about whether or not the two offices of Watkins & Letofsky could be an integrated enterprise. That was remanded, and the District Court in this case found that the two offices are an integrated enterprise, and also that under California's ABC test that Susan Watkins and Nancy Letofsky are employees rather than independent contractors. The issue here is whether or not we have numerosity, whether or not we have the sufficient number of employees to make Watkins & Letofsky an employer under 42 U.S.C. section 12115A. That requires there to be 15 or more employees on each working day for 20 or more calendar weeks in the current year or the previous year. The year that we're looking at here is 2017. 2016, I think we've excluded 2016 as meeting the criteria. All right, so we're only looking at 2017. It's my understanding as I look back at it, yes. All right. Can I just begin by asking, in your briefing, you seem to have criticisms about reliance on both Exhibit J and Exhibit M. I guess it would just be helpful for me if you could say what set of data you would like us to rely upon. Sure. Well, we relied on Exhibit J, which had been produced in Discovery. Exhibit M had not been produced. It only showed up in the summary judgment briefing. Was there any data that underlay Exhibit M that you didn't have access to in Discovery? There was. The Exhibit M includes information on employees that were only there partial weeks, and therefore you wouldn't count them for that week. When certain people left and didn't leave, we did not have that information prior to seeing it in Exhibit M. Did you ask the district court for alternative relief, like giving you a chance to reopen Discovery if you needed it to challenge that information? No, we did object to the exhibit, but we did not ask for that type of relief for further Discovery. It looks to me like Column 3 on Exhibit M, the number of employees at pay date, is actually the same data that's contained in Exhibit J. It's similar. My understanding of M is that they broke it down to a weekly level, whereas Exhibit J, I believe, is every two weeks, because they were doing pay periods every two weeks. And so that's, I think, what the main distinction is. Okay, but otherwise, is there some difference that you're aware of between that column on Exhibit M and Exhibit J? In terms of the number, I don't recall seeing anything that was particularly different. The main issue is that when you add Susan Watkins and Nancy Lotovsky, as the district court did, but then you add Jake Lotovsky, who was employed throughout that. We learned this by subpoenaing the payroll protection plan records that were submitted to the bank, and Jake Lotovsky shows up as an employee there with employer number 14, which is lower than Amy's employee number 39. And in the deposition, his mother, Nancy Lotovsky, said that he'd worked there while going to school. Yeah, but so I'm looking at her depo, ER 185. And she does say, the question was, does your son work for the firm? He did work for the firm. When? I don't recall the dates. Do you remember approximately how many years ago he started? No. He worked on and off, different times, summer, you know. And if I'm correct, and please tell me if I'm not correct, I don't recall that there was any kind of a declaration from the son, right? No. So how does the fact that at some time or other, he worked for the firm without knowing what the dates were, how does that get you to the finish line? Well, under the Walters versus Metropolitan Educational Enterprises case, 519 U.S. section is whether or not there's an employment relationship. And there's no, because Jake Lotovsky's still showing up in 2020, when they're applying for PPP loans, he's showing up as an employee there. And we know from the mother's testimony that he worked there before, and we don't have any information that his employer relationship was ever terminated. But you don't have any, there was nothing in the record about a particular week that he worked or particular days in a week? No, but, and that's the point is under the Walters case, that doesn't matter. All that there needs to be is an employment relationship. Was there anything in the record about his unavailability? I mean, why he couldn't have been deposed or a declaration obtained? I mean, is there anything in the record that gives a reason, like he had moved out of the jurisdiction of the court? We can't get in touch with him. Mom doesn't know where he is or anything like that? No, nothing like that. I think the main thing is we learned about him so late in the process. We subpoenaed the PPP records and then took the deposition. Ms. Lotovsky was sort of toward the end, I believe, of the reopened discovery period. Discovery was somewhat limited at that point. Did you try to, under Rule 56, extend it so that you could take his deposition? No, we didn't do that in this case, Your Honor. Again, I think that the record establishes, through the mother's testimony, or Ms. Lotovsky's testimony and the PPP records, that he had an employment relationship that was ongoing. He just worked periodically. Do you need Jake to be counted in order to prevail? Well, it certainly gives us a lot more weeks. The way that we counted it, I think that we do make, I think we came up with 27. But when you add three to all of the different dates, which would be... I'm sorry. We add three or we add four, depending on when. Because after Ms. Buchanan goes on medical leave, of course, she needs to be counted too. And she's not being counted in the paychecks records because she's not getting a paycheck while she's on medical leave. I'm sorry, go ahead. Just as to Jake, I mean, you don't feel you need him in order to... Originally, I don't think we counted him and we came up to 27. But your view as to the plaintiff is that no matter how long somebody is on medical leave and not working at all and not coming in, that they still count. That's what the Walters case would say. Well, that's your interpretation is that somebody who's on medical leave, no matter how long it is, that they count. As long as they maintain an employment relationship. And I don't think that Watkins, even as of yesterday in state court, they were saying, well, we never terminated her employment. So all the way through at least the end of November 2017, which is the date that we attribute to the termination of Ms. Buchanan's employment. And she continued working and was on leave. As I understand it, she was on medical leave, Ms. Buchanan, in May of 2017 through November 30th of 2017. Is that correct? That's the dates that we... And you interpreted the termination of her employment because she was taken off of the employer's medical insurance plan? That's right. She received a COBRA letter notifying her that she contacted, that they had taken her off of the insurance. This was right after she had made a wage complaint to the Labor Commissioner. Right after that, they took her off the insurance. And she understood that, along with receiving COBRA, that she was now no longer employed. So even if she was not being paid on payroll during that medical leave, she was on the employer's group insurance medical plan? That's correct. Was she receiving any other benefits from the employer during that time? No, they were talking back and forth a little bit. She wanted to come back to work part time. And they were concerned whether or not that was going to work. That was happening in August. September, they took her off the insurance plan initially. She called them. They put her back on. But then in November, they took her off permanently. So that's why. So let's set aside Jake for one moment. It seems when you're looking... If one looks at Exhibit M in the different columns, and I know you agree with the District Court about adding the two employees, Nancy and... Susan.  If you were to add Amy Buchanan, you know, plus three during her medical leave, depending on which column you use, that seems to me to come out to different results. So if you use the, you know, under Exhibit M, the number of employees at the week start, if you add three to that number when Buchanan was on medical leave, you get to 18. But if you do it at the pay date start, I counted, I think, 21 or 22 weeks. Does that jive with the numbers that you have come up with? Because there have been different numbers. And I think there was a bit of a muddle that you may be including Jake. But even if you set aside Jake, you may get past 20 weeks with just those three. Yes, and there are a number of ways that you can count that. And one of the ways we counted, we did come up with 27 doing it without Jake. But I believe it was without Jake. But yes, I mean, and that's the main thrust of the appeal, is that there are genuine issues of material fact here that should have precluded summary judgment because there are factual questions about these documents and these records. Did the district court explain why the court was relying on the column that related to the week's start date? I have to admit, I don't recall that specifically. I don't recall that specifically. I'm sorry. All right, counsel, you're out of time. But we've taken up a lot of your time with questions. So we'll give you two minutes for rebuttal. Thank you. Good morning. May it please the court. I'm Daniel Watkins representing the respondent. We believe that the court, the district court, did properly determine. Plaintiffs failed to present sufficient evidence establishing a tribal issue on the question of 15 employees. I would like to just briefly touch on the court's questions regarding discovery and go back to the procedure that was in place to discuss whether the underlying evidence was available to appellant at the time. When we came up on the first motion for summary judgment with respect to integrated enterprise, this court sent it back to the district court for determination on the number of employees. The district court requested additional briefing on that issue and after the briefing then reopened discovery. She denied the motion for summary judgment, the first one, without prejudice and reopened discovery for the purposes of determining the 15 count. At that time, Exhibit M had been provided to, on two separate occasions, the plaintiff or appellant now, for them to use and to question on in that discovery process. They did what they did with it and discovery closed. Exhibit M was then again presented as part of the second motion for summary judgment. As to whether there was information available to them in discovery that formed the basis of the... The Exhibit M is a summary of personnel files and payroll records. They had the payroll records and they had the availability to ask for the personnel files when discovery was reopened and did not. So the court did properly consider Exhibit M and properly counted the weeks on Exhibit M. And to address the court's question on which column applies, the column to the left which addresses the number of employees addresses the pay date number. Those pay dates are on two-week intervals which makes it difficult to establish what the number of employees was in between those pay dates. Column to the far right at the end of each week identifies the number of employees that were employed at the end of that week. Why do you think, Mr. Watkins, that that would not be a tribal issue as to which is the appropriate payroll data that should be used? If one results in being below the threshold for ADA coverage and the other one exceeds it, why isn't that an issue that should be tried before the court? Because the question is whether or not there were 15 employees for each week of 20 weeks in that year. The column to the right analyzes that. The column to the left does not. And there is no question of fact when it comes to the right column. The plaintiffs have not presented that. They have not presented any scenario where there are more than 15 employees for more than 20 weeks. But the scenario is right there. It's in one of the columns. And then if we look at the Supreme Court's language, it says the ultimate touchstone is whether the employer has an employment relationship. And if people are being paid, even if over a two-week cycle, and they have an employment relationship, and that results in something that exceeds the 20-week count, why isn't that something that at a minimum the district court should have addressed why she was choosing one column versus the other? There's no evidence to suggest... Well, let me back up. The two columns work together. The column to the right helps define the number of employees identified at each pay period. And there is reason stated as to why that number might be different. For example, one employee left on such date. Another employee joined on such date. So the employment relationship with the number of employees is identified and available for the plaintiff and appellant to have gone into that and discovered they did not. So the Exhibit M provides an explanation. There is no other evidence to say that, no, these aren't the number of employees at the end of each week. But Walters, as I read it, did not accept the notion that an employment relationship has to be someone being paid on that day, right? It's the employment relationship. It's not necessarily being compensated on a given day. And so if the first column suggests an employment relationship because over a two-week cycle an employee is being paid, it seems to me that that could be a basis to provide ADA coverage. So if you're looking at the Walters language, you know, under the interpretation we adopt, all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year. And if so, when? He is counted for each working day after revival and before departure. That language would seem to potentially encompass the first column as well as the second. But it would require to exclude the evidence in the second column and the explanation of employment for each of the employees. If the left column identifies an employee who is being paid, let's just say on March 1st, and yet on March 8th, that employee is no longer employed, column to the right identifies that. So the next pay period, if somebody else came in, they might have the same number, but it wouldn't necessarily reflect who was employed during those weeks. Counsel, could you address whether we should count Jake and whether we should count plaintiff? Yes, and we'll start with Jake. Jake should not be counted. First plaintiff appellant first raised the issue of counting Jake on appeal. Jake was not argued to be counted in the motion for summary judgment. But more important, there is no evidence whatsoever that Mr. Jake Letofsky was employed in 2016 or 2017. From what I'm hearing from appellant, it sounds like once employed, always employed, but that's not the case. There needs to be some type of active component to an employment relationship. And if Mr. Letofsky is employed in 2020, Jake Letofsky, as evidenced by the PPP documents, there's nothing to suggest that he worked in 2016 or 2017. They had an opportunity to question Ms. Letofsky further on that. They had an opportunity to talk to Jake Letofsky, and they did not. There's not a piece of evidence, not a statement from the plaintiff, not a statement from anybody in the case that suggests Mr. Letofsky was employed in 2016 or 2017. Before you answer the question about the plaintiff, did Jake ever show up on the payroll records? And when, if so? Before the court, it's 2020. We didn't investigate it as part of the motion for summary judgment. What we do know is he's not an employee being paid in 2016 and 2017 because he's not listed on the payroll records for those years, which are in evidence. The first that he shows up as being a paid employee is in 2020 under the PPP documents. That's what's before the court, and I honestly don't know the history of Mr. Letofsky's employment as I stand here. Okay, and if you want to finish your question, Mr. Plaintiff. Please address the plaintiff's status. Even if we add the plaintiff in for the purposes of counting, we still only land at 17 weeks as the district court determined. She's included in the payroll counts, or excuse me, the employee counts up to May 17. She then drops off after May 17. And if we count May 17 to November 30, 2017, there are additional 14 weeks. So even if we add three people, if we add her in, so we include Mrs. Letofsky, Mrs. Watkins, and the plaintiff from May 17 to November 30, we still land with 14 additional weeks, plus the three from the beginning of 2017, and that's how we get to 17. But can I ask this? What is your view as to whether there was an employment relationship with the plaintiff during her medical leave? We're not disputing that she was employed. She was on leave and employed. We did not terminate her, and that's part of our plan as it relates to other matters. So you're conceding that she should be counted? Yes, for the purposes of the number, yes. Okay. And with that, it's 17 as the district court accurately determined. All right. So just, I did want to, if I didn't say this, I did want to correct a statement that was made. As it relates to Mrs. Watkins and Mrs. Letofsky, there has been no actual determination that they were, in fact, employees. All that's been determined is there's a tribal issue of fact on that question. And as we look to, and so we include them in on the count for Exhibit M, and as we look to Exhibit M, again, it's a summary of documents that were provided and available in the discovery process that the plaintiff could have looked at and done their own counts on, and they could have challenged the respondent on those counts in the discovery process that was specifically opened by the district court for this purpose. And with that, pending any further questions, we'll submit. All right. Thank you.   Your Honors, Exhibit M was not produced until the summary judgment briefing. There's no Bates number on it. We never received that. That's why we objected to it. Jake Letofsky was raised in the summary judgment briefing. Particularly, you can see it. I reproduced it on page 5 of our reply brief from ECF number 72 in the district court's docket, where we do raise the issue of Jake Letofsky. So that was not raised for the first time on appeal. It's right there in the summary judgment briefing. His mother stated, and this is Nancy Letofsky, that he worked on and off the firm at Summers and at various times while he was in school. She also testified about he was working at the city of Irvine for about a year and a half. This is when we were taking her deposition in 2023. And that prior to that, he was still in school. So he was still in school during this time period. He worked throughout that time frame. His employee numbers, number 14, was very low. They've never shown anywhere where he was terminated. I did ask specifically in deposition about the dates that he worked. They weren't able to tell me. I asked specifically, you know, when did he start? When did he finish? The information just was not forthcoming. And we also request, I think the responses to the request for production of documents are in the record where we asked for all of the information about these employees and didn't receive it all. So it's not like we didn't ask at all. We did not take Jake Letofsky's deposition or that in the reopened discovery period. That's true. But it's not like we didn't ask at all. And when you count him particularly, we're way over the threshold of 15 employees for each of the 20 weeks in 2017. And even without him, as Judge Sanchez mentioned, you can make a count. It comes up to that. So there are at least questions of material fact.  Thank you. We thank counsel for their arguments. And the case just argued is submitted. With that case, we move to the next case on the argument calendar.
judges: BENNETT, SANCHEZ, THOMAS